IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARJORIE C. "CAM" MANNING AND
CHARLES h. "HERBIE" MANNING                                            PLAINTIFFS

V.                              CASE NO.  4:09CV00302 JMM

UNITED STATES OF AMERICA, ET AL.                                       DEFENDANTS

**ORDER**

Pending before the Court is separate defendant Bagherzadeh Azar's Motion for Summary Judgment. For the reasons stated below, the motion is granted (#28).

Plaintiffs bring their complaint pursuant to the Federal Tort Claims ACT, 28 U.S.C. § 1346(b), 2671 *et seq.,* against the Veterans Administration which operates the Veterans Administration Hospital ("VA Hospital") and its employees, and Dr. Azar alleging negligence based upon their failure to diagnose and treat Mrs. Manning's breast cancer.

Dr. Azar contends that she is entitled to judgment in her favor because plaintiffs did not timely file their cause of action against her.

I.  *Facts*

Plaintiffs filed their original complaint on April 23, 2009. Plaintiffs did not name any individual physicians or "John Doe" physicians. On December 8, 2009, plaintiffs filed an Amended Complaint and for the first time named Baghezadeh Azar, J.D., as an individual defendant. Dr. Azar is a radiologist who participated in the care and treatment of Mrs. Manning.

Dr. Azar first treated Mrs. Manning on May 24, 2005, by performing a mammogram. In May of 2007, Dr. Azar recommended that plaintiff have annual mammograms and made an appointment for Mrs. Manning for May 13, 2008.

Dr. Azar last treatment of Mrs. Manning as a patient was on October 12, 2007, when she amended her review of an MRI report and recommended a biopsy. Mrs. Manning did not keep the May 13, 2008 appointment because on February 6, 2008, Mrs. Manning had a biopsy at another facility which found cancer in her left breast. She subsequently received full time care from the M.D. Anderson Cancer Center

The history of plaintiff's treatment at the VA Hospital is as follows.

On June 23, 2005, Dr. Azar interpreted bilateral diagnostic mammograms and reported that the hypoechoic lesions demonstrated on ultrasound were not definitely seen on the mammogram. Her impression was suggestion of implant rupture. She recommended "further work up", including MRI and biopsy if "no MRI correspondence."

On June 23, 2005, Dr. Romana Rayaz performed and interpreted an ultrasound of the left breast and reported that there was a "hypoechoic lesion on the four o'clock axis in the left breast" and that further work up was "necessary." She recommended a biopsy of the lesion if "no MRI correspondence" and she recommended an MRI.

On August 3, 2005, an MRI was performed and interpreted by Dr. Azar. She reported a lesion as benign and recommended "routine follow up."

On November 8, 2005, a diagnostic mammogram and ultrasound of the left breast were interpreted by Dr. Azar and she recommended three month follow up with another mammogram and an ultrasound of the "probably benign" lesion in the four o'clock axis of the left breast. Dr. Azar stated "these findings and options were discussed with the patient".

On March 1, 2006, Dr. Azar interpreted a mammogram and ultrasound of the left breast and reported distortion at the four o'clock axis of the left breast corresponding to stable irregular hypoechoic areas seen on ultrasound. Dr. Azar recommended bilateral mammograms to be done in May 2006 and recommended an ultrasound of the left breast in May 2006, to further evaluate

the irregular asymmetric density of hypoechoic probably benign lymph node left breast. She also recommended a MRI of the left breast.

On April 19, 2006, Dr. Azar interpreted the MRI of Mrs. Manning's left breast and noted a clinical history of swelling and fever of the left breast. She dictated an impression of diffuse enhancement of the left breast which may be due to proliferative phase of the menstrual cycle. She also noted a benign appearing lymph node on the six o'clock axis. She recommended a three-month follow up of the left breast MRI in the second or third week of the menstrual cycle

On July 17, 2006, Dr. Azar interpreted an MRI of the left breast and stated that the clinical history was a three-month follow up of the left breast during the second or third week of the menstrual cycle. Her impression was diffuse enhancement representing benign proliferative changes, and recommended annual bilateral mammograms. She further recommended routine physical breast exams due to the extreme density of Mrs. Manning's breast.

On May 1, 2007, diagnostic mammograms and ultrasounds were interpreted by Dr. Azar as showing no suspicious finding and she recommended annual bilateral mammograms be performed, and an MRI of both breasts to evaluate areas of fibrosis. An appointment was made for Mrs. Manning for bilateral mammograms in May of 2008.

On June 11, 2007, an MRI was interpreted by Dr. Azar and she noted diffuse skin thickening and diffuse glandular enhancement in the retroareola region of the left breast. She noted enlarged lymph nodes in both axillary tails. She recommended an MRI in three months "to confirm stability of this skin thickening and diffuse glandular enhancement of the left breast".

On October 2, 2007, as amended on October 12, 2007, Dr. Azar issued an MRI report of the left breast with a comparison to the June 11, 2007, report. She noted diffuse skin thickening and diffuse glandular enhancement unchanged since prior study - suspicious for inflammatory carcinoma. She recommended a skin biopsy to exclude inflammatory carcinoma.

On October 16, 2007, a punch biopsy of the left breast was performed pursuant to Dr. Azar's recommendation. 24. On October 17, 2007, the punch biopsy of Mrs. Manning's left breast was misinterpreted by Dr. Robert F. Schaeffer as being benign. Subsequently, in 2008, this report was amended at the VA to show that it contained tumor emboli.

On October 25, 2007, the result of the biopsy was telephoned to Mrs. Manning that the biopsy showed skin fibrosis and was negative for malignancy. On November 27, 2007, Mrs. Manning was seen by Dr. Rayaz in the Primary Care Clinic for annual exam. Dr. Rayaz notes that last mammogram was May 7, 2007, and MRI of both breasts in October 2007 was negative for malignancy. Her examination was reported as normal.

On November 27, 2007, Dr. Rayaz entered an addendum to the notes to state that the breast exam showed thickening skin of the left breast and that the right breast was normal. On November 27, 2007, Dr. Rayaz entered an order for an appointment with the Woman's Clinic on February 27, 2008.

On January 2, 2008, Dr. Rayaz consulted general surgery with a provisional diagnosis of thickening of the skin of the left breast - needs skin biopsy and established a consult appointment for January 15, 2008, with Dr. Anne Mancino of the Breast Clinic.

On January 10, 2008, Mrs. Manning appeared in the emergency room of the VA Hospital complaining of breast and chest pain, stating that she had had a biopsy one month ago and that her swelling and tenderness had increased over the last week.

On January 10, 2008, Dr. Mark Cheek's note in the emergency room says that one to two-week history of abnormal expanding left breast and reports that she has had multiple MRl's of the left breast and all have shown no malignancy. Dr. Cheek on January 10, 2008, also noted that the left breast MRI of October 2, 2007, showed breast heterogeneously glandular with significant skin thickening of the left breast unchanged since prior exam. Dr. Cheek's assessment stated that she had an enlarged left breast and that he did not think that her breast was infected.

On January 15, 2008, Mrs. Manning was seen by Dr. Mancino in the Breast Clinic (general surgery) with a right breast rash and was given hydrocortisone cream. Dr. Mancino noted that Dr. Azar's interpretation of the MRI showed skin thickening but no definite mass. She noted that pathology showed no evidence of malignancy.

On January 22, 2008, Dr. Rayaz requested another left breast biopsy. On January 22, 2008, Dr. Mancino again saw Mrs. Manning in the Breast Clinic and again noted the rash on the breast. She noted further nipple retraction. She and Dr. Moseley concluded that another biopsy was necessary.

On January 25, 2008, history and physical exam by Ann Mancino states that "she has been followed with a series of mammograms and MRl's of her left breast" and she was assessed as having a breast mass with plans for an elective left breast mass biopsy. This biopsy was scheduled at the VA Hospital for February 1, 2008.

Instead, on February 6, 2008, a biopsy was performed by Dr. James F. Hagans at the Surgical Pavilion in Little Rock which showed cancer. On February 19, 2008, doctors at M.D. Anderson reviewed the slides from the skin biopsy performed on October 17, 2007, and interpreted the slides contrary to the interpretation of Dr. Schaeffer to show invasive carcinoma - ductal differentiation.

On February 20, 2008, a mammogram was performed at M.D. Anderson Hospital and interpreted to show linear enhancing calcification with diffuse distribution left breast and stated that the calcifications were estimated to extend to a minimum of 11 by 10 by 4 cm.  The mammogram also showed an irregular mass appearing 3 cm with spiculated margins in the upper outer quadrant of the left breast.

II. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds.  *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008);  Fed. R. Civ. P. 56.  The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   Where a motion for summary judgment is properly made and supported an opposing party must set forth specific facts showing a genuine issue for trial.  *See* Fed.R.Civ.P. 56(e)(2).

Medical malpractice claims in Arkansas are subject to a two-year statute of limitations. Ark. Code Ann. § 16-114-203(a).  The cause of action accrues on "the date of the wrongful act complained of and no other time." Ark.Code Ann. § 16-114-203(b).

Defendant Azar contends that her last care and treatment of Mrs. Manning occurred on October 12, 2007, when Dr. Azar amended her review of an MRI report and recommended a biopsy. Since the amended complaint was filed more than two years from this treatment, Dr. Azar asserts the statue of limitation as a complete bar to the action against her.

Plaintiffs contend that Dr. Azar continued to care for Mrs. Manning after October 1`2, 2007, because Dr. Azar was interacting with Mrs. Manning's other physicians for years in trying to diagnose what was happening with Mrs. Manning's left breast and this care continued by her treating physicians at the VA until January of 2008.  Mrs. Manning states that she considered herself to be

under the care team of Dr. Mancino, Dr. Rayaz, and Dr. Azar until her treatment started at M. D. Anderson in February of 2008.

Plaintiffs concede that the last time Dr. Azar actually read Mrs. Manning's radiographic study was on October 12, 2007. In support of their argument plaintiffs filed VA Hospital Records and an affidavit of Dr. Rebecca Zuurbier who states that in her opinion Dr. Azar "was heavily involved in the care of Mrs. Manning with regard to the diagnosis of her breast issues from 2005 all the way through the last test she interpreted in October 2007, and that she was still involved with the patient's care into the future by virtue of the scheduling of mammograms in May 2008." Pl. Resp., Doc. #31 Ex. 5.

Plaintiffs rely on the doctrine of "continuing treatment" which tolls the statute of limitations when the nature of the patient's illness is such that a doctor engages in or undertakes a continuing course of treatment and care. *See Baker v. Radiology Assocs., P.A.* 72 Ark. App. 193, 35 S.W.3d 354 (2000). The statute does not begin to run until the actual treatment or care has been terminated. *Id.* The continuous treatment doctrine does not apply if the alleged malpractice is a single, isolated act. *Id.*

Plaintiffs contend that the use of the mammograms read by Dr. Azar before October 12, 2007, by doctors at the VA after October 12, 2007 and the fact that Dr. Azar made a May of 2008 appointment for Mrs. Manning to have another mammogram amounts to continuous treatment.

The Arkansas Court of Appeals has held in *Baker* that "continuing treatment" doctrine was inapplicable to a radiology group consulted by plaintiff's gynecologist who allegedly misread two annual screening mammograms because each reading was a "separate and distinct" wrong in absence of any "indication that the radiologists were engaged in any active consultation with the gynecologist or in the ongoing treatment of the plaintiff for any specific condition." *Id.* at 200-201.

Plaintiff contends that Dr. Azar was engaged in active consultation because "[o]n October 2, 16, 17, 25, 2007; November 27, 2007; and January 2, 10, 15, 22, and 25, 2008, the doctors working

with Dr. Azar were seeing Mrs. Manning and continually relying upon the reports which she had previously issued."

The Court of Appeals rejected a similar argument in *Baker* when it stated that the doctrine would not apply when "current mammograms are viewed in conjunction with previous mammograms to determine if a change has occurred." *Id.* at 200.

Although plaintiffs contend that Dr. Azar discussed Mrs. Manning's left breast findings with Dr. Mancino and Dr. Ravaz each on at least one occasion, the Court has reviewed the hospital records and found no evidence that Mrs. Mannings doctors consulted with Dr. Azar after October 12, 2007, with the exception that they relied on previous mammograms read by Dr. Azar. Based upon the reasoning in *Baker*, this reliance on previous mammograms would not constitute continuous treatment.

Moreover, the Arkansas Supreme Court has held that scheduling a future doctor's appointment did not constitute the requisite continuous treatment needed to toll the statute. *Raynor v. Kyser*, 993 S.W.2d 913, 916 (Ark. 1999).

Based on the holdings in *Raynor* and *Baker*, the Court finds that the doctrine of "continuous treatment" did not toll the applicable two-year statute of limitations and Dr. Azar's Motion to Dismiss is granted.

III. *Conclusion*

Dr. Azar's Motion to Dismiss is granted and plaintiffs's claims against her are dismissed.

IT IS SO ORDERED THIS  24   day of   May  , 2010.

                                                          James M. Moody
                                                          United States District Judge